**EXHIBIT 1**



# REPORT

# OF THE

# MARYLAND STATE PROSECUTOR

# 2024

Charlton T. Howard III
Maryland State Prosecutor
Office of the State Prosecutor
40 West Chesapeake Ave
Suite 300
Towson, MD 21204
(410) 321-4067
info.osp@maryland.gov

# TABLE OF CONTENTS

I.     Foreword …………………………………………………………….. 3

II.    Statutory Authority …………………………………………… 4

III.   Agency Leadership and Current Organization …………………......... 5

IV.    Agency Operations …………………………………………….. 8

V.     Significant Case Examples ……………………………………… 16

VI.    Agency Budget …………………………………………….. 23

VII.   Contacting the State Prosecutor ……………………………………. 25

VIII.  Appendix – Executive Biographies…………………………………… 26

## Seal of the Office of the State Prosecutor



## Motto of the Office of the State Prosecutor

The agency motto is "Quis Custodiet Ipsos Custodes?" The Latin phrase, roughly translated as "Who Will Guard the Guardians?", is found in the work of the Roman poet Juvenal and is frequently quoted to highlight the challenging efforts of a society to hold accountable those who wield public power.

## Mission and Vision

The Office of the State Prosecutor combats political corruption, official misconduct, election law violations, and other crimes throughout Maryland by conducting independent, professional, and timely investigations and prosecutions of alleged criminal offenses, partnering where appropriate with federal, state, and local partners, and leveraging the best available technical, legal, and human resources.

# I. Foreword

The Maryland Office of the State Prosecutor (OSP) was formed by constitutional amendment and legislation in 1976 and began operation in January 1977. Responding to several contemporary political scandals, OSP was intended to restore public confidence in the integrity of state and local government institutions and the electoral process in Maryland by establishing an independent, politically neutral, law enforcement agency to investigate and prosecute allegations of corruption and misconduct involving public officials and employees, and potential violations of Maryland election, ethics, and campaign finance laws.

In 2024, OSP successfully targeted political corruption, official misconduct, and criminal threats to the electoral process throughout the State, proceeding independently or in concert with local, state, and federal partners. OSP also worked with hundreds of political campaigns to come into compliance with election law requirements, ensuring transparency in our electoral process. Pursuant to our charter, OSP operated in a politically neutral, independent modality, while striving to be as transparent as possible to individual complainants, other law enforcement stakeholders, and the public at large. At the same time, OSP has continued to refine its operating protocols, policies, and organizational structure, resulting in an improved capability to respond to complex financial crimes and highly sensitive special victim offenses. OSP has also supported legislative and policy initiatives regarding necessary legal reforms to enhance its ability to successfully investigate and prosecute instances of corruption and official misconduct. Details of many of these efforts can be found below.

OSP's success is due in large part to our superb team of prosecutors and investigators. I am extremely proud of their accomplishments during this past year and anticipate even greater achievements in the years to come.

Charlton T. Howard III

## II. Statutory Authority

The OSP was established by constitutional amendment and legislation in 1976 (Chapter 612, Acts of 1976, ratified Nov. 1976), and began operation in January 1977.

The State Prosecutor may investigate on his/her/their own initiative, or at the request of the Governor, the Attorney General, the General Assembly, the State Ethics Commission, or a State's Attorney, certain criminal offenses. These offenses include: 1) State election law violations; 2) State public ethics law violations; 3) State bribery law violations involving public officials or employees; 4) misconduct in office by public officials or employees; and 5) extortion, perjury, or obstruction of justice related to any of the above.

At the request of the Governor, Attorney General, General Assembly, or a State's Attorney, the State Prosecutor may also investigate alleged crimes conducted partly in Maryland and partly in another jurisdiction, or in more than one political subdivision of the State.

If a violation of the criminal law has occurred and the State Prosecutor recommends prosecution, the Office makes a confidential report of its findings and recommendations to the Attorney General or the State's Attorney having jurisdiction to prosecute the matter. Such a report need not be made to the State's Attorney, however, if the State Prosecutor's findings and recommendations contain allegations of offenses committed by the State's Attorney. If the State's Attorney to whom the report is rendered fails to file charges within 45 days in accordance with the State Prosecutor's recommendations, the State Prosecutor may prosecute such offenses. The State Prosecutor may immediately prosecute offenses set forth in the report and recommendations if they are alleged to have been committed by a State's Attorney.

Where no violation of the criminal law has occurred or prosecution is not recommended, the State Prosecutor reports the Office's findings to the agency that requested the investigation. The report is made available to the public if the subject of the investigation so requests.

In investigating and prosecuting cases within OSP's jurisdiction, the State Prosecutor has all the powers and duties of a State's Attorney.

The State Prosecutor is nominated by the State Prosecutor Selection and Disabilities Commission and appointed by the Governor for a term of six (6) years and until his/her/their successor is appointed and qualifies. The State Prosecutor may be removed only for misconduct in office, persistent failure to perform the duties of the office, or conduct prejudicial to the proper administration of justice (*Criminal Procedure Article*, Md. Code, Sections 14-101 through 14-114).

## III. Agency Leadership and Current Organization

**OSP Structure**

At the conclusion of 2024, OSP had sixteen permanent personnel: six attorneys (including the State Prosecutor), eight special agent/criminal investigators, and one administrative manager. OSP also employed one contractual part-time attorney, one contractual part-time investigator, and two contractual paralegals, as well as a small number of law student interns on a periodic, part-time basis. All personnel are primarily assigned to the OSP office at 40 W. Chesapeake Ave, Suite 300, Towson, MD 21204, though liberal telework is often employed to ensure flexibility of operational response. As the Office has state-wide jurisdiction, and consequently investigates and prosecutes cases throughout the state, OSP personnel often engage in extensive travel, and frequently expend significant resources to remain on site during the pendency of a case or court hearing.

The office is organized as indicated in the chart below:



## OSP Office Move

In August 2024, OSP moved from Hampton Plaza, 300 E. Joppa Rd, Towson, MD, 21286, to a new office at 40 W. Chesapeake Ave, Towson, MD, 21204. This move was the culmination of several years of planning and engagement with the Maryland Department of General Services, as a shortage in space began to severely hamper agency operations. OSP had outgrown its prior location of over 20 years during which time it had over doubled in the number of personnel. OSP is now postured for future success, with sufficient space to interview witnesses and victims, conduct complex, confidential investigations and litigation, and to engage in outreach and training initiatives with federal, state and local partners.

## OSP Leadership

*Full biographies of OSP senior leadership can be found in the Appendix.*

### State Prosecutor

Charlton T. Howard III was appointed as the Maryland State Prosecutor by Governor Larry Hogan on November 7, 2019, charged with directing the investigation and prosecution of public corruption, official misconduct, election law violations, and other crimes throughout Maryland.

### Deputy State Prosecutor

Sarah David joined the Maryland Office of the State Prosecutor in 2018 as a Senior Assistant State Prosecutor. She was promoted to Deputy State Prosecutor in January 2020. Ms. David oversees the Office's strategic partnerships, legislative agenda, and budget, as well as a caseload of corruption and police misconduct cases.

### Senior Assistant State Prosecutor, Police Misconduct

Abigail Ticse joined the Office of the State Prosecutor in 2022 and was promoted to the position of Senior Assistant State Prosecutor – Police Misconduct in February 2023. She is responsible for leading the Office's efforts targeting law enforcement misconduct and corruption throughout the State.

### Senior Assistant State Prosecutor, Official Misconduct & Special Victims

Mary Setzer joined the Maryland Office of the State Prosecutor in 2023 and is responsible for the investigation and litigation of political corruption and public official misconduct matters throughout the State, specializing in those cases involving special victims.

**Senior Assistant State Prosecutor, Chief Counsel**

Joyce McDonald joined the Maryland Office of the State Prosecutor at the end of 2023 on a part-time basis upon her retirement from the U.S. Attorney's Office in Maryland after a highly successful career. One of the most respected corruption prosecutors in Maryland, she provides expertise and support to complex corruption and litigation matters.

**Senior Assistant State Prosecutor, Election Integrity**

Brittany Dunklow joined the Maryland Office of the State Prosecutor at the start of 2025. She is a Senior Assistant State Prosecutor responsible for the investigation and litigation of political corruption and public official misconduct matters throughout the state, specializing in those cases involving election integrity.

**Assistant State Prosecutor, Political Corruption**

Stephanie Haddad joined the Office of the State Prosecutor in 2024 and is responsible for litigating corruption and other official misconduct matters throughout the State.

**Director of Investigations**

Timothy Frye joined OSP in 2013 and was appointed as the Director of Investigations in 2017, responsible for overseeing all agency investigations, and coordinating joint efforts with counterpart local, state, and federal law enforcement organizations.

**Deputy Director of Investigations**

John Sieracki joined OSP in 2020 after a 28-year career as a criminal investigator with local, state, and federal law enforcement experience. He was promoted to Deputy Director of Investigations in 2023, responsible for leading criminal investigations, and providing investigative support and guidance to ongoing OSP prosecutions.

**Director of Administration**

Ruth Sweeney joined the Office of the State Prosecutor in 2019 and currently serves as the Director of Administration where she is responsible for managing the daily administrative operations for the office.

## IV. Agency Operations

During 2024, OSP continued to pursue an ever-increasing caseload of public corruption, official misconduct, and election/campaign finance law offenses with diligence and success. Several technical enhancements and operational improvements –including the employment of an electronic case management system and sophisticated forensic accounting software, as well as the growing utilization by the public of an automated complaint portal on the OSP agency website – resulted in an increase in both the quantity and relevance of complaints and consequent investigations, as well as a greater rate of successful closures. In addition, sustained engagement with key law enforcement partners, particularly the Maryland State Police (MSP), the Federal Bureau of Investigation (FBI), the United States Attorney's Office, and local State's Attorney's Offices, allowed OSP to leverage necessary investigative and legal resources.

Complaints are received via referral from the Governor, the Attorney General, the General Assembly, local State's Attorneys, the State Board of Elections, the State Ethics Commission, other state or local agencies, or by the general public via personal contact or by the aforementioned complaint portal located on the OSP website. Complaints can also be initiated by OSP on its own initiative. All complaints are reviewed, assessed, and assigned by the Office's leadership intake team.

OSP employs a vertical prosecution model, where prosecutors and investigators partner from the very beginning of an investigation through any eventual prosecution or other resolution. All cases are tracked and documented in accordance with OSP policy utilizing an electronic case management system.

Cases are investigated either unilaterally by OSP personnel, or jointly by OSP personnel and other agencies, most often the MSP or the FBI. At the conclusion of an investigation eliciting evidence of a crime, a charging decision is made after appropriate coordination with the local State's Attorney. OSP attorneys then charge and prosecute the case in the appropriate state court. In addition, OSP prosecutors handle all subsequent appeals and post-conviction matters. If a joint OSP-FBI case is also prosecuted in federal court by the U.S. Attorney's Office, OSP attorneys will often support the prosecution as designated Special Assistant United States Attorneys.

## Election Law

OSP is responsible for the investigation and enforcement of numerous election laws, including allegations of failure to file required reports or pay required fees, authority line violations, double voting, voting by non-citizens, and over-contributions, among many others. Many referrals come to OSP from the State Board of Elections. These two agencies work closely together to ensure the election laws of Maryland are upheld.

Since OSP's inception, the number of referrals involving election law violations has increased significantly during periods of heavy election activity (tracking the federal and state election cycles). While most cases involving sustained violations are resolved with compliance agreements and administrative penalties, some matters involving significant violations or recalcitrant defendants require criminal prosecution.

Election law violations that do not meet the threshold for criminal liability are handled administratively by OSP with the issuance of civil citations, which if contested, are adjudicated in the District Court of Maryland.

**Special Victims Unit**

In 2023, OSP established a Special Victims Unit (SVU) in response to an ever-increasing number of official misconduct complaints alleging sexual assault, sexual exploitation, and workplace violence. The SVU was facilitated by additional funding provided in the last legislative session and was established to enable the Office to best address the complexities and sensitivities which accompany the prosecution of crimes involving exploitation or violence targeting women, children, and vulnerable adults, particularly when the perpetrators of such conduct are public officials.

In 2024, OSP received 58 SVU-related official misconduct complaints. OSP prosecuted an Easton Police Department Sergeant who engaged in sexual conduct with two teenagers in his police vehicle while on duty. This case went to trial in September 2024, and the Defendant was found guilty on two counts of Misconduct in Office. In November 2024, he was sentenced to four years of incarceration, with six months to serve, followed by three years of supervised probation.

As illustrated, OSP regularly receives complaints about sexual misconduct committed by public officials in a variety of roles. While OSP collaborates with local, state, and federal partners on specific cases, particularly to help ensure the safety of victims, the inherent conflicts and challenges confronting our partners with many of these allegations underlines the importance of our role as an independent agency with specialized expertise in the often-nuanced law regarding public official misconduct. Additionally, the nature and sensitivity of the Office's investigations means that much of the investigative tasks must be handled internally within OSP.

Throughout the last year, OSP SVU has conducted outreach with many local prosecutors' offices throughout the State, educating them on our new unit specializing in misconduct involving sexual violence or exploitation. OSP SVU has also conducted outreach with various non-profit partners serving victims of sexual abuse throughout the State, to ensure they are aware of our unit, should they ever serve a client who is the victim of misconduct by a public official.

Looking forward, utilizing OSP's enlarged training room in our new location, we hope to host training sessions for various internal affairs divisions of police departments, as well as general counsels and inspector generals throughout Maryland. This training will ensure that these officials are better equipped to identify cases in the special victims arena which may constitute misconduct in office and refer those cases to OSP for a prompt criminal investigation. OSP also plans to conduct training for administrative bodies, particularly our non-law enforcement ethics-based partners, such as the State Ethics Commission, Office of Legislative Ethics, and other agencies who address SVU complaints in a non-criminal context, so that they are also equipped to identify complaints that should be referred to the Office for investigation.

In the past, OSP had been forced to decline cases that were brought to the Office at a late stage in the investigation because corruption issues were not addressed at an earlier juncture and in accordance with the statute of limitations. With the outreach and training OSP has conducted and will continue to conduct through the SVU, we anticipate our Office to continue receiving referrals on these cases earlier than had previously occurred, allowing us to better handle the complexities related to investigating and prosecuting misconduct in office involving sexual misconduct.

## Anti-Corruption Policy Initiatives

OSP couples its investigative and prosecutorial mission with efforts to enhance the government's ability to comprehensively address issues related to public corruption and fair elections. OSP works with the Maryland State's Attorney's Association and the Maryland State Board of Elections along with other agency and legislative partners to promote legislation to address corruption and election law issues.

OSP and the State Board of Elections worked together to extend the statute of limitations for election law violations to four years, providing both offices with adequate time to address cases where significant fraud takes longer to uncover and investigate.

OSP also successfully supported legislation to stay internal police investigations until any related criminal investigation is completed. This will ensure that the Office can bring the strongest criminal cases and address the most serious corruption crimes brought against police officers.

In addition, OSP has worked with other prosecutors and the State Board of Elections to address challenges presented by Artificial Intelligence (AI). The Office worked on several pieces of legislation to help protect elections and victims from AI's influence. We look forward to engaging in this important work next session and in the future.

OSP also partnered with the Domestic Violence Workgroup of the Maryland State's Attorney's Association to pass legislation to make wiretap evidence admissible in court with certain requirements. We hope that future discussions will help ensure that evidence recorded by victims can be admissible in Maryland Courts.

OSP has engaged the Maryland Sentencing Commission to reclassify misconduct in office as a more serious offense when it involves victims. This allows our office to ask for higher sentences for individuals who used their position of trust to commit a crime without deviating from the Maryland Sentencing Guidelines. The Office hopes to continue working with the Commission to address the current low guidelines in cases where individuals engage in massive theft schemes, sexual offenses, and other crimes using their positions of trust.

OSP representatives serve on the Domestic Violence Workgroup of the Maryland States Attorney's Association, the Maryland State Bar Association's Criminal Law Section Council, the Family Violence Workgroup's Stalking Task Force, and several other organizations that address policy concerns in criminal law. We are proud to extend our efforts to ensure compliance and create laws that enhance transparency and accountability in Maryland.

**Operational Statistics**

Details of the Office's investigations and prosecutions are provided in the charts below.

| OSP Criminal Investigation Statistics (excluding failure to file cases) | | | | | |
|---|---|---|---|---|---|
| **Fiscal Years** | **FY 2020** | **FY 2021** | **FY 2022** | **FY 2023** | **FY 2024** |
| Number of Complaints Received | 136 | 166 | 439 | 710 | 1022 |
| Number of Investigations Opened | 35 | 93 | 63 | 109 | 138 |
| Number of Cases Closed | 14 | 120 | 171 | 263 | 570 |
| Number of Cases Referred | N/A | 33 | 66 | 151 | 347 |
| Number of Cases Charged | 7 | 13 | 5 | 5 | 5 |
| Post Conviction & Appellate Litigation | 5 | 12 | 12 | 8 | 7 |
| Number of SVU Complaints Received | * | * | * | * | 58 |
| Number of SVU Investigations Opened | * | * | * | * | 8 |
| Number of SVU Cases Charged | * | * | * | * | 1 |

**\*SVU cases were not tracked as a statistic until FY2024.**

## General Criminal Investigations

### General Criminal Complaints



**\*Referrals made to other agencies were not a tracked statistic in FY 2020**

**Election Law and Campaign Finance Complaints**

| OSP Election Law Enforcement | | | | | |
|---|---|---|---|---|---|
| **Fiscal Years** | **FY 2020** | **FY 2021** | **FY 2022** | **FY 2023** | **FY 2024** |
| Number of Referrals | 358 | 506 | 197 | 1,128 | 711 |
| Enforcement Action Taken | 105 | 49 | 68 | 631 | 186 |
| Civil Penalties | $24,680 | $128,391 | $133,405 | $201,090 | $282,306 |

The rate of election law and campaign finance referrals, the majority of which originate from the State Board of Elections, tracks the federal and state election cycles. Delays in reporting are often caused by the challenges of collecting information from local boards of election and garnering essential financial data from different institutions. Given the past trends following hotly contested elections, and the technical and process improvements discussed above, OSP expects ever-increasing numbers of both referrals and enforcement actions during periods of heavy election activity in the upcoming fiscal years.





OSP works closely with the State Board of Elections to coordinate the processing and assessment of complaints to ensure OSP's limited investigative and prosecutorial resources are employed in an optimum manner to enforce the laws safeguarding the integrity of state and local elections. OSP enforcement actions include both civil and criminal remedies, and in the first instance are most often geared to bring errant parties into compliance with the regulatory requirements, while at the same time identifying individual instances of criminal culpability meriting further investigation and litigation. Despite the cyclical reduction in referrals, OSP's focused engagement and coordination with the State Board of Elections, and the Office's technical and process improvements discussed above, have resulted in a greater quantity and quality of OSP enforcement actions over the past two years, a trend which is expected to continue.

## V. Significant Case Examples

### *State of Maryland v. William "Christopher" McCollum*

On February 16, 2023, William "Christopher" McCollum, Treasurer for the campaign finance committees "Friends of Cathy Bevins" and the "Baltimore County Victory Slate," was charged with multiple counts of felony theft scheme, embezzlement, and perjury. He subsequently pleaded guilty to one count of felony theft scheme and one count of perjury.

According to the Statement of Facts accompanying the plea, McCollum was methodically stealing funds raised by both committees. Between April 2015 and January 2020, McCollum embezzled $111,014.89 in funds from the "Friends of Cathy Bevins" campaign, which he used for his personal benefit. McCollum stole the funds using direct payments to pay his personal credit card bills and by taking checks made out to the "Friends of Cathy Bevins" from donors and depositing those checks directly in his personal bank account. While acting in his official capacity, he transferred money from the campaign accounts to his bank accounts and wrote checks from the campaign to supposed vendors and deposited them into said accounts.

When acting as the treasurer for the "Baltimore County Victory Slate," McCollum embezzled $31,269.63 from May 2015 through December 2018. McCollum used similar tactics to deposit checks made out to the "Baltimore County Victory Slate" into his personal bank account as well as pay his credit card bills.

On July 31, 2023, McCollum was sentenced to five years, with all but six months suspended, for one count of felony theft scheme and for one count of perjury.

### *State of Maryland v. Kyle Thomas*

On August 23, 2023, former Cecil County Sheriff's Office Deputy Kyle L. Thomas, was charged by criminal information with misconduct in office, witness retaliation, visual surveillance with prurient intent, revenge porn, and distribution of obscene material. He subsequently pleaded guilty to misconduct in office and visual surveillance with prurient intent and on January 10, 2024, was sentenced to six years in prison, with all but one year suspended, followed by three years of supervised probation.

Thomas served as a Deputy for the Cecil County Sheriff's Office from February 2021 through July 2023. During that time, Thomas shared sexual photos and videos with a woman with whom he had a romantic relationship, identified as "VICTIM 1," primarily using the social media application Snapchat, because communications and other exchanges typically disappear from the application once viewed. In June 2021, while on duty as a sworn Deputy, Thomas took an explicit

video of himself in his police uniform, in the Sheriff's Office, and shared the video with VICTIM 1 on Snapchat.

VICTIM 1 ended her relationship with Thomas shortly thereafter and reported Thomas to the Cecil County Sheriff's Office. In response, the Sheriff's Office initiated an internal investigation. When Thomas learned of the investigation, he filed charges with a Cecil County Commissioner, requesting that criminal charges be filed against VICTIM 1 for presenting the Sheriff's Office evidence against him.

During the same period, Thomas was in a sexual relationship with another woman, identified as "VICTIM 2." Thomas took photos and videos of VICTIM 2 engaged in sexual acts, without her knowledge or consent, and sent the videos to dozens of different social media users. Thomas paid several of the users to watch the videos.

When VICTIM 2 attempted to end her relationship with Thomas, he threatened to post photos and videos of VICTIM 2 on social media, and later sent explicit photos to her loved ones. In May 2023, Thomas received a copy of a search warrant affidavit in this investigation that contained statements made by VICTIM 2. The next day, Thomas sent VICTIM 2 a photo of the affidavit accompanied by expletives calling VICTIM 2 a "liar" and a "b****." In May 2023, VICTIM 2 obtained a Final Protective Order against THOMAS. Thomas was charged and convicted by the Cecil County State's Attorney's Office for violating the Protective Order.

While sentencing Thomas, the sentencing judge stated, "The defendant's conduct is best described as depraved, sadistic, and vicious."

### *State of Maryland v. Erica Griswold*

On January 26, 2024, Erica Griswold, the elected Register of Wills for Anne Arundel County, was charged with misconduct in office, misappropriation by a fiduciary, and theft.

Griswold ultimately pled guilty to misconduct in office on June 4, 2024, pursuant to a written plea agreement with the Office of the State Prosecutor. As part of the stipulated facts within her plea agreement, Griswold admitted that on or about June 16, 2023, a cashier's check for $6,645.00 was received by the Office of the Register of Wills in Anne Arundel County. The remitter of the check was a beneficiary of an estate open within the Office, and the check was made payable to Ms. Griswold for the purpose of satisfying an invoice received from the Office for payment of non-probate inheritance tax.

On the same day, the employee who was processing the mail at the Register of Wills Office took the check directly to Griswold and inquired whether she had any information relating to the check, because the envelope did not include a copy of the invoice it was intended to satisfy. Griswold admitted that she falsely advised the mail processor that she had been expecting this

check (implying that the check was intended for Griswold in her personal capacity), and based on Griswold's false representation, the employee allowed Griswold to keep possession of the check. Griswold did not know the payor of the check, and she knew the check was not intended for her personal use.

Furthermore, Griswold admitted that she was aware that computer system searches could be conducted to identify the name of a person who has an interest in an estate in order to identify the estate with which they are associated and/or the invoice in which a check was intended to satisfy. These searches were not conducted in this case because of Griswold's false representation that she had been expecting this check for herself personally.

At approximately 12:43 p.m. on or about June 22, 2023, at the Chase Bank located on Forest Drive in Annapolis, Maryland, Griswold cashed the $6,645.00 check, and kept the cash for her personal use.

Subsequently, the payor of the check contacted the Register of Wills Office to determine why he was still receiving invoices from the Office for $6,645.00 due in inheritance tax, that he believed he had already paid.

Griswold ultimately repaid the money to the Office of the Register of Wills on February 23, 2024, almost seven months after she was made aware that the payor had contacted the Office because he continued to receive invoices, and nearly a month after an Anne Arundel County Grand Jury returned an Indictment against her.

On July 18, 2024, Griswold was sentenced to 18 months suspended incarceration, with two years unsupervised probation.

### *State of Maryland v. Jason Dyott*

On April 4, 2024, Jason Dyott, an Easton Police Department Sergeant, was charged with two counts of misconduct in office.

Sergeant Dyott, who had served as a sworn law enforcement officer with the Easton Police Department since approximately June 2008, used his departmental cellular telephone to communicate in a sexual manner with multiple teenage students at local high schools in Talbot County, Maryland.

In approximately November 2022, Sergeant Dyott began communicating with TEENAGE VICTIM # 1 via the Snapchat application. Sergeant Dyott leveraged his position as a police officer in order to engage in a sexual relationship with TEENAGE VICTIM # 1, and he sent her multiple photographs which contained sexually provocative language and depicted him in his police uniform. On November 13, 2022, Sergeant Dyott was on duty as a sworn law enforcement officer

with the Easton Police Department, and while on duty and in uniform, he met with TEENAGE VICTIM # 1 and made out with her in his police vehicle.

In November 2022, Sergeant Dyott began communicating with another young female, identified as "TEENAGE VICTIM # 2," via his departmental cellular telephone. On November 11, 2022, Sergeant Dyott was on duty as a sworn law enforcement officer, when he picked up TEENAGE VICTIM # 2 from a residence and engaged in sexual intercourse with her inside of his patrol vehicle.

After a court trial held on September 9-10, 2024, in the Circuit Court for Talbot County, Dyott was found guilty of two counts of Misconduct in Office.

At the Sentencing hearing held on November 1, 2024, the Office of the State Prosecutor argued that the guidelines have increased for the crime of misconduct in office. The Office had previously advocated an increase to the guidelines for misconduct in office in front of the Maryland Sentencing Commission. Prosecutors emphasized that this case, like many cases where individuals are victimized by a person in a position of trust, should result in a period of incarceration. The Judge found that regardless of the applicable guidelines, there were several reasons for departure from the guidelines when sentencing the Defendant, stating several times that the behavior was "awful" and "well beyond an embarrassment."

Jason Dyott was sentenced to four years of incarceration, with six months incarceration to be served, followed by three years of supervised probation.  When sentencing the Defendant, the Judge stated, "people in positions of trust shall not abuse the trust, and if they do, they'll be dealt with in an appropriately serious manner."

### *State of Maryland v. Jamel R. Franklin*

On June 20, 2024, Jamel R. Franklin, former Prince George's County Council Member, was charged with multiple counts of felony theft scheme, embezzlement, and perjury. On August 26, 2024, Franklin pled guilty to one count of theft scheme over $100,000, and one count of perjury. On November 13, 2024, Franklin was sentenced to five years of incarceration, with all but one year suspended, and three years of supervised probation for one count of felony theft scheme over $100,000, and five years of incarceration, all suspended, for one count of perjury, to run concurrently. Franklin was also ordered to pay $133,168 in restitution.

Franklin served as the Council Member representing District 9 from 2010 to 2018 and was the At-Large Council Member representing all of Prince George's County from 2018 through June 2024. He established his campaign committee "Friends of Mel Franklin" in 2009 to raise funds for his election to the Prince George's County Council and had served as the Chairperson for the committee since the committee's inception.

From 2020 through October 2023, Franklin stole $124,450.10 from the Friends of Mel Franklin campaign, and used those funds to pay for, among other things, personal loans and credit card debt, his personal rent, and personal subscriptions. He also used those funds to pay for international trips and cosmetic procedures for himself and a close friend.

Additionally, from 2021 through December 2023, Franklin used an additional $8,718.57 from the campaign account to pay third parties directly for his personal expenses. Franklin used the funds to pay for personal hotel-stays and cosmetic procedures for he and a close friend, and for a deposit for an international trip in 2024. Franklin also admitted to using the funds to pay off his personal credit card and for the upkeep of his personal vehicle.

The transactions for Franklin's personal gain were not reported on the required campaign finance reports for the Friends of Mel Franklin campaign. Franklin signed dozens of false campaign finance reports under the penalties of perjury and submitted them to the State Board of Elections.

## Examples of Civil Election Law Enforcement

### *State of Maryland v. Warren Halle*

On July 24, 2024, a civil citation was issued against Warren Halle for violating section 13-402 of the Election Law Article of the Maryland Code, which prohibits any person, directly or indirectly, from making contributions in excess of $6,000 to a single campaign finance entity in an election cycle. Halle paid a $125,000 fine on August 6, 2024.

In 2022, Jessica Haire was campaigning for the position of County Executive for Anne Arundel County, Maryland. Halle is the CEO and founder of the Halle Companies, a development, construction, and real estate property management company. According to the affidavit in support of the civil citation, on April 5, 2022, Halle distributed 13 checks from his bank account to friends, family, or employees. The names of the payees on the checks were individuals identified as having contributed the maximum $6,000 contribution per person to the Friends of Jessica Haire campaign finance entity during the January 1, 2019 to December 31, 2022 election cycle.

Checks disbursed from Halle's bank account were identical amounts to reimburse those individuals for their contributions to the Friends of Jessica Haire campaign. Specifically, Halle reimbursed $6,000 to an individual, and $12,000 to married couples who donated to the campaign entity in both partners' names. During the January 1, 2019, to December 31, 2022, election cycle, Halle reimbursed a total of $149,000 to 24 individuals who gave a $6,000 donation, and to one individual who made a $5,900 donation to the Friends of Jessica Haire campaign finance entity.

### State of Maryland vs. Manpreet Hundal

On November 20, 2024, a citation was filed against Manpreet Hundal for failure of her campaign finance entity, "People for Manpreet Hundal," to disburse funds after they passed through the hands of the treasurer during the 2022 Gubernatorial Election cycle. Hundal was appointed as the Chairperson for the campaign finance entity and ran for election to the Maryland House of Delegates as a candidate for representative of District 8.  Pursuant to the Election Law section of the Maryland Code, assets of a campaign finance entity "may be disbursed only if they have passed through the hands of the treasurer and in accordance with the purposes of the entity." Manpreet Hundal, as the candidate and Chairperson, signed checks disbursed by the campaign and made all other disbursements in violation of campaign finance law.

### State of Maryland v. 1776 Project PAC

On October 12, 2023, OSP and the State Board of Elections announced that the 1776 Project PAC was fined $20,250 dollars and issued a civil citation for sending 13,879 text messages to Carroll County voters in the 2022 School Board Election.

The text message sent on November 1, 2022 to Carroll County voters, read "Stop indoctrination in our schools, early voting has started [sic] vote for the pro-parent ticket for school board Tara Battaglia, James Miller and Steve Whisler." Maryland law requires campaign messages sent on behalf of candidates to indicate who paid for the information to be distributed, whether it is a yard sign, a pamphlet, or a digital advertisement. There was no authority line or information stating that the text was paid for by the 1776 Project PAC.

Traditionally, authority line violations have been sanctioned with minimal citations but the advent of advanced technology in campaigns, which allows candidates to access thousands of people with the press of a button, requires more scrutiny to ensure the public knows who paid for information they receive about candidates.

### State of Maryland v. John King for Governor

John King for Governor campaign committee was fined $2,000 dollars via civil citations for sending campaign material to at least two Maryland State Education Association (MSEA) board members ahead of the 2022 Maryland Primary Election without an authority line.

According to the affidavit in support of the civil citations filed by the Office of the State Prosecutor, the emails, sent on or about March 24, 2022 from the email address honestmddems@gmail.com to MSEA board members, contained campaign material relating to the

background of Wes Moore, who was a candidate in the 2022 Gubernatorial Primary at the time. The emails did not contain the authority line information required by Maryland law.

The OSP affidavit in support of the citations states that the honestmddems@gmail.com account was logged into using a Verizon IP address subscribed to by Joseph O'Hern. O'Hern was the campaign manager for the John King for Governor campaign.

Maryland law requires campaign messages sent by a campaign finance entity to include the name and address of the treasurer of each campaign finance entity responsible for the campaign material. It further requires if campaign material is published by an individual that the person responsible for the material's distribution needs to be identified. There was no authority line or information stating that the emails or attachments were sent by or paid for by the John King for Governor campaign.

## V. Agency Budget

The charts below reflect the OSP budget during the reporting period and immediately preceding periods. The subsequent charts display the rise in complaints received by the Office compared to the budget allocation over the same reporting period, demonstrating that the increase in the Office's budget is directly related to the rising number of cases. OSP anticipates future requests for additional resources if the growth in mission requirements continue.

| OSP Budget | | | | | |
|---|---|---|---|---|---|
| **Fiscal Years** | **FY 2020** | **FY 2021** | **FY 2022** | **FY 2023** | **FY 2024** |
| **FUNDS** | | | | | |
| General | $1,714,610 | $1,717,166 | $1,829,050 | $2,209,614 | $2,757,371 |
| Special | . | . | . | . | . |
| Total Funds | $1,714,610 | $1,717,166 | $1,829,050 | $2,209,614 | $2,757,371 |
| Reimbursable | . | . | . | . | . |
| **STAFF** | | | | | |
| Authorized | 13 | 13 | 13 | 13 | 17 |
| Contractual (FTE) | . | . | 1.5 | 3 | 3 |
| Total Staff | 13 | 13 | 14.5 | 16 | 20 |

## Budget vs. Criminal Complaints







## VII. Contacting the State Prosecutor

**Mailing Address, Phone Number, and Email Address**

Office of the State Prosecutor

40 West Chesapeake Ave.

Suite 300

Towson, Maryland 21204

Phone: 410.321.4067

Fax: 410.321.3851

Email: info.osp@maryland.gov

**Social Media**

OSP shares information through its various social media outlets, to include X, formerly known as Twitter (@OSP_MD), LinkedIn (Office of the Maryland State Prosecutor), Facebook (@OSPMD), and Instagram (osp_md).

**How to File a Complaint**

OSP has jurisdiction to investigate and prosecute violations of state law related to: 1) election law violations; 2) public ethics law violations; 3) bribery law violations involving public officials or employees; 4) misconduct in office by public officials or employees; and 5) extortion, perjury, or obstruction of justice related to any of the above.

Anyone may file a complaint with OSP. The OSP online complaint form on OSP's website (osp.maryland.gov/file-a-complaint/) is the most efficient way to file a complaint. Information about the complainant can be provided, or complaints can be filed anonymously.

The information provided by complainants is handled according to OSP's internal policies and guidelines, and appropriate action is taken. It is OSP's general policy not to comment on the status or existence of any investigation unless and until it is charged criminally.

## VIII. Appendix - Executive Biographies

### Charlton T. Howard III, Maryland State Prosecutor

Mr. Howard was appointed as the Maryland State Prosecutor by Governor Larry Hogan on November 7, 2019.

A Maryland native, Mr. Howard was born in Baltimore and raised in Dundalk. He graduated with merit from the U.S. Naval Academy in 1980 and served for five years as an intelligence officer in the U.S. Marine Corps. After leaving active duty, Mr. Howard attended the University of Maryland School of Law, where he was Editor in Chief of the Maryland Law Review, graduating with honor in 1988. He subsequently clerked for the Honorable Francis D. Murnaghan, Jr., U.S. Court of Appeals for the Fourth Circuit. In 1989, Mr. Howard was appointed as an Assistant State's Attorney (ASA) in Baltimore, prosecuting misdemeanor and felony crimes.

Continuing to serve as a reserve officer, Mr. Howard transferred from the Marine Corps to the Navy Reserve. In 1991, he was recalled to active duty for the Persian Gulf War and assigned as a counterintelligence agent with the Naval Criminal Investigative Service (NCIS). At the conclusion of the war, he accepted a civilian position as an NCIS Special Agent, conducting and managing criminal, counterintelligence, and terrorism investigations for the next 22 years in various locations throughout the world, including the Americas, Asia, Europe, and the Middle East. His assignments included case agent for award-winning narcotics operations and homicide investigations in Southeast Asia; lead counterintelligence agent for the International Force East Timor; lead supervisor for the USS Cole Task Force; Assistant Special Agent in Charge, Central and South America; Chief, Overseas Counter-Terrorism Division; Chief of the Department of the Navy Multiple Threat Alert Center (MTAC); Special Agent in Charge, Washington Field Office; and Assistant Director, Intelligence and Information Sharing. In 2006, he served as the Director of the Multi-National Force Iraq Strategic Counterintelligence Directorate, leading joint counterespionage and counter-terrorism efforts in Iraq during the height of the insurgency. In 2010, Mr. Howard was named NCIS Executive Assistant Director and concurrently head of all Navy Human Intelligence Operations. He ultimately retired from NCIS in 2013.

Mr. Howard then returned to the Baltimore City State's Attorney's Office as an ASA in the Major Investigations Unit, prosecuting criminal gang members and violent repeat offenders. In 2015, he joined the Maryland Attorney General's Office, serving as a Supervisory Assistant Attorney General overseeing the statewide child support enforcement program, until appointed to his current position.

Mr. Howard was named the NCIS Special Agent of the Year in 2000. His other awards include the Navy Superior Civilian Service Award, two Navy Meritorious Civilian Service

Awards, the NCIS National Security Career Achievement Award, the Department of Defense Counterintelligence Award, the International Narcotics Enforcement Officers Association International Award of Honor, the Defense Meritorious Service Medal, the Joint Civilian Service Commendation Award, and numerous other law enforcement, intelligence community, and military commendations and service awards. Mr. Howard retired from the Naval Reserve in 2007 as a Navy Captain. Most recently, Mr. Howard received the Maryland Daily Record's Leaders in Law Lifetime Achievement Award.

### Sarah R. David, Deputy State Prosecutor

Ms. David joined the Maryland Office of the State Prosecutor in 2018 as a Senior Assistant State Prosecutor. She was promoted to Deputy State Prosecutor in January 2020. Ms. David oversees the Office's strategic partnerships, legislative agenda, and budget, as well as a caseload of corruption and police misconduct cases.

Ms. David graduated *Phi Beta Kappa* from Johns Hopkins University in 2007 where she studied Political Science and Arabic. A 2006 Truman Scholar and a 2008 George J. Mitchell Scholar, Ms. David obtained a Master's Degree in Comparative Ethnic Conflict from Queens University in Belfast, Northern Ireland. Ms. David studied Arabic language in both Egypt and Morocco before working as an Intelligence Research Specialist in the New York City Police Department's (NYPD) Counterterrorism Division. During her time at the NYPD, Ms. David served as primary briefer to the Deputy Commissioner for Counterterrorism, a regional specialist in the Levant and Iraq, and was tasked to the Joint Terrorism Task Force for special case assignments.

Ms. David attended the Francis King Carey University of Maryland School of Law as a Leadership Scholar and graduated *cum laude* in 2013. After graduating from law school, Ms. David clerked for the Maryland Court of Special Appeals before serving as an Assistant State's Attorney in the Baltimore City State's Attorney's Office where in addition to her general caseload she was specially assigned to high-profile, complex prosecutions. Ms. David left the State's Attorney's Office to serve as Chief of Staff to the Chairman of the Judicial Proceedings Committee in the Maryland State Senate, where she worked on legislation related to criminal, civil, family, and many other areas of law.

Ms. David has been recognized in the community for her work in non-profits and professional organizations by the Maryland Bar Foundation as a Maryland Bar Fellow, as a graduate of the Maryland State Bar Association Leadership Academy, by the Associated Jewish Charities as a Fred Walpert Community Award Recipient, and by the Maryland Daily Record's Leading Women, Top 100 Women, and Top Leader in the Law.

**Abigail Ticse, Senior Assistant State Prosecutor, Police Misconduct**

Ms. Ticse joined the Office of the State Prosecutor in 2022 and was promoted to the position of Senior Assistant State Prosecutor – Police Misconduct in February 2023. She is responsible for leading the office's efforts targeting law enforcement misconduct and corruption throughout the state.

Ms. Ticse graduated *magna cum laude* and Order of the Coif from the University of Maryland School of Law, where she served as an Associate Editor of the Maryland Law Review. During law school, Ms. Ticse interned for the Organized Crime Unit of the Maryland Attorney General's Office, and the Honorable Marcus Z. Shar of the Circuit Court of Baltimore City. She also participated in the Consumer Protection Clinic representing underserved members of the community.

After law school, Ms. Ticse clerked for the Honorable Michael A. DiPietro of the Circuit Court for Baltimore City. She then worked as an Associate at Silverman Thompson, practicing civil litigation and criminal defense. Prior to joining the Office of the State Prosecutor, Ms. Ticse was an Assistant United States Attorney for the District of Maryland in the Major Crimes Unit, where she investigated and prosecuted federal crimes throughout the State.

Ms. Ticse has been recognized by *Maryland Super Lawyer* as a "Rising Star" and by *Best Lawyers* as "One to Watch."

**Mary Setzer, Senior Assistant State Prosecutor, Official Misconduct & Special Victims**

Ms. Setzer joined the Maryland Office of the State Prosecutor in 2023 and is responsible for the investigation and litigation of political corruption and public official misconduct matters throughout the state, specializing in those cases involving special victims matters.

Ms. Setzer graduated *magna cum laude* from the University of Baltimore School of Law in 2012, where she served as the Comments Editor for the *University of Baltimore Law Review* and was a member of the Heuisler Honor Society.

Immediately after graduating from law school, Ms. Setzer clerked for the Honorable Paul A. Hackner in the Circuit Court for Anne Arundel County. She then served as an Assistant State's Attorney in the Anne Arundel County State's Attorney's Office, handling a variety of high-profile cases including sexual assaults and homicides, and serving as the Chief of the Domestic Violence Division of the Special Victims Unit.

Prior to joining the Office of the State Prosecutor, Ms. Setzer served as an Assistant United States Attorney for the District of Maryland for four years, where she led the office's investigative efforts in human trafficking cases, investigating and litigating highly complicated and high-profile human trafficking cases throughout the State. Ms. Setzer also served as the Violence Against Women Act (VAWA) Coordinator for the United States Attorney's Office and prosecuted numerous federal child exploitation and sex crimes cases.

Ms. Setzer was selected as the 2022 recipient of the "Top Prosecutor" Award by *Women in Federal Law Enforcement* (WIFLE), a national award presented to a federal prosecutor who has demonstrated exemplary achievements in the prosecution of crimes involving trafficking of women and children. She was also selected as the 2022 recipient of the "Investigation of the Year" Award by Homeland Security Investigations, for her multi-year investigation of a human trafficker who victimized dozens of women and children throughout Maryland.

Ms. Setzer has presented as a guest lecturer on numerous occasions on topics relating to Violence Against Women, including presentations to large audiences comprised of health care professionals, law enforcement officials, attorneys, and victim service professionals.


**Brittany Dunklow, Senior Assistant State Prosecutor, Election Integrity**

Brittany Gause Dunklow joined the Office of the State Prosecutor in January 2025. She is a Senior Assistant State Prosecutor, responsible for leading the office's Election Integrity efforts, addressing election law and campaign finance violations, and misconduct by public officials related to the electoral process.

Ms. Dunklow was formerly a Senior Trial Attorney with the Allstate Insurance Company. She defended Allstate and its insureds against bodily injury and property damage lawsuits and has tried hundreds of cases throughout the State of Maryland at the District and Circuit Court level.

Ms. Dunklow is a graduate of Indiana University and Howard University School of Law. Following law school, she clerked for the Honorable DaNeeka Varner Cotton in the Circuit Court for Prince George's County where she discovered her passion for litigation. Following her clerkship, she developed her trial skills with the Maryland Office of the Public Defender in Baltimore City where she represented individuals charged with traffic and misdemeanor criminal offenses.

Ms. Dunklow devotes many hours to the legal community. She is a member of the Alliance of Black Women Attorneys of Maryland, the Bar Association of Baltimore City, the Monumental City Bar Association, and the Maryland State Bar Association, where she serves on the Judicial Appointments Committee.

**Stephanie Haddad, Assistant State Prosecutor, Political Corruption**

Ms. Haddad joined the Office of the State Prosecutor in 2024 and is responsible for the investigation and litigation of public corruption matters throughout the state.

Ms. Haddad graduated from the University of Maryland Francis King Carey School of Law in May 2021, where she received The Order of Barristers, Maryland Law Scholars Award, and earned an Intellectual Property Law Certificate. Ms. Haddad also served as the Judges Committee Captain for the National Trial Team, President of the Christian Legal Society, Justice for Phi Alpha Delta, and as a Student Note Taker. During her time in law school, Ms. Haddad worked for various small and boutique law firms, at a financial planning firm, and served as a law clerk for the Howard County Office of Law.

After law school, Ms. Haddad clerked for the Honorable Harry C. Storm of the Circuit Court for Montgomery County. Prior to joining the Office of the State Prosecutor, Ms. Haddad served as an Assistant State's Attorney at the Baltimore City State's Attorney's Office, where she prosecuted both misdemeanors and felonies in the Baltimore City District and Circuit Courts.

Ms. Haddad currently serves as a coach for the University of Maryland Francis King Carey School of Law's National Trial Team, and her Quinnipiac Team finished as National Finalists in 2024 and received several awards during the competition.

**Timothy Frye, Director of Investigations**

Mr. Frye has been with OSP since 2013 and is a career criminal investigator with 35 years of state-wide law enforcement experience.

Amongst other duties, Mr. Frye is responsible for directing a staff of OSP special agents conducting criminal investigations of suspected public corruption, misconduct by public officials, violations of the election laws, and other crimes, as well as overseeing the review and processing of all complaints and referrals to the Office and providing investigative support to ongoing OSP prosecutions. He also serves as the OSP liaison to the Maryland law enforcement community and leads the Office's information sharing and data collection efforts.

Prior to joining OSP, Mr. Frye served with the Maryland State Police for 27 years, including 20 years in the Criminal Investigation Division, where he had multiple roles as an investigator, supervisor, and commander. Mr. Frye's assignments included 13 years supporting the Maryland Attorney General's Criminal Investigation Division, eight years with the State's gun violence reduction/firearms efforts, and three years in the Homicide Unit.

Mr. Frye is a native Marylander and a graduate of the University of Maryland.

**Ruth Sweeney, Director of Administration**

Ms. Sweeney joined the Office of the State Prosecutor in 2019 and currently serves as the Director of Administration where she is responsible for managing the daily administrative operations for the office.

Ms. Sweeney graduated from Roanoke College with a Bachelor of Arts in Political Science. She retired as a paralegal from the Baltimore County State's Attorney's Office (SAO) in 2018. During her tenure at the SAO, she received a Governor's Citation and a Baltimore County Police Department Chief's Award for her work as the SAO paralegal working with the Baltimore City/Baltimore County Police Departments' Regional Auto Theft Taskforce.

Ms. Sweeney received a second Chief's Award from the Baltimore County Police Department for her work in implementing the SAO Body Worn Camera Unit.

Ms. Sweeney is honored to have served the citizens of Maryland at both the Baltimore County State's Attorney's Office and the Office of the State Prosecutor for over thirty years.