**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DALYA ATTAR<br>JOSEPH J. ATTAR<br>KALMAN G. FINKELSTEIN,<br><br>Defendants. | CASE NO. 1:25-cr-00324-SAG |

**DEFENDANT DALYA ATTAR'S REPLY**
**IN SUPPORT OF MOTION TO DISMISS**

Defendant Dalya Attar ("Senator Attar") by and through undersigned counsel, respectfully submits this Reply in further support of the Motion to Dismiss (ECF No. 45) and respectfully requests the Court schedule a hearing on the Motion to Dismiss.

## I.    INTRODUCTION

The Government's Opposition ("Opp.") to Senator Attar's Motion to Dismiss is an exercise in revisionist history. The Government devotes ten pages of "factual background" to the hopeless task of justifying its classification of an embittered long-term stalker as "Victim 1" and her married love interest—and the only person claiming to have seen a compromising video of the two—as "Victim 2." Buried within the pages of distraction is the core fact that Senator Attar and her family sought only to be left alone by these "victims." Yet, here we are, after the State Prosecutor's Office spent years rattling its saber, the U.S. Attorney's Office has adopted a case that is equal parts

interpersonal squalor and prosecutorial vagueness, where the overarching federal interest in pursuing such a case is truly a mystery.

Consistent with this misuse of federal investigative resources, the Opposition struggles to pin down precisely what the "object" of the alleged extortionate plot even is. It posits several inconsistent theories. On the one hand, the Government contends that the "thing of value" was Senator Attar's desire to prevent interference with her political campaign. But on the other hand, the Government asserts that the "object" of the conspiracy was Victim 1's economic interest in her ability to make a livelihood as a political consultant. Neither of the Government's theories hold water; first, because they do not comport with longstanding principles of extortion law—including the critical difference between extortion and coercion; and second, because the latter object is inconsistent with the allegations actually contained within the Indictment. And indeed, as the Government well knows, the Defendants made clear to Victim 1 that they simply wanted to be left alone.

For these reasons, and those provided in the Opening Motion to Dismiss, Senator Attar respectfully requests that this Court dismiss Counts Two, Three, and Five, Six, Seven, and Eight of the Indictment.

## II.    ARGUMENT

### a.  The Motion's Recitation of Facts Supports the Conclusion That the Indictment Fails to Adequately Allege Violations of the Extortion Statute and Travel Act.

After providing ten pages of its own advocacy-driven narrative, the Government takes issue with Senator Attar's Motion's recitation of the relevant factual background, claiming it is "comprised largely of unsubstantiated allegations" and that it has "no place in a motion to dismiss filed at this stage in the proceeding." Opp. at 14. The Government is wrong on both points.

As an initial matter, the Government's representation that there is no substantiated evidence of harassment by Victim 1 is contradicted by the plain language of Senator's Attar's motion, which provided a significant example of documentary proof of the threats received from Victim 1. The Government attempts to brush aside this evidence, characterizing it as "vague" and untimely. There is nothing vague about the threat depicted in the text message: **"Beware . . . When u least expect it, expect it. Goodbye. This is my final warning."** Moreover, the date upon which the threat was sent to Senator Attar by Victim 1, October of 2018 — two years before the alleged events at the center of the Indictment took place — only serves to underscore the fact that Victim 1's campaign of harassment spanned *years*, and continued even after repeated requests from Senator Attar to be left alone, as illustrated below:




Whatsapp messages between Senator Attar and Victim 1 from 2022. Senator Attar's messages are depicted in green.

The Government's representations and summary of the facts conveniently omit mention of these messages, notwithstanding the fact that the government *knows* they exist, as the defense provided these messages to the Maryland State Prosecutor in September of 2024. Simply put, the

Government's contention that the harassment of Senator Attar by Victim 1 is "unsubstantiated," at best, overlooks the relevant realities; at worst, it advances a warped interpretation of them.

Finally, the Government asks the Court to disregard Senator Attar's "factual contentions," claiming that they were included merely to "discredit[] the evidence in support of Victim 1's account." Opp. at 15. Not so. These "factual assertions" provide relevant factual context necessary to analyze the deficiencies in the Indictment. Victim 1's campaign of harassment against Senator Attar and her family forms the foundational basis from which the alleged "obtaining" of the "object" of the alleged extortionate scheme should be understood. This context has proven particularly important given that the Government's Opposition struggles to identify the actual "object" of the alleged conspiracy, as discussed in further detail below.

Indeed, despite the Government devoting ten pages of its Opposition to the recitation of its factual contentions, its brief continuously injects a subtle theme that since factual determinations are not part of the Court's assessment of a pretrial motion to dismiss, this Court must deny the motion and allow the record to flesh itself out at trial. The siren song of "not right now, Your Honor" misses the point of the factual characterizations made by the defense: to show that the Government's stated theory of the alleged extortion's object is at its heart a contorted one. In an era of endless opportunities for opinion amplification (by traditional media, social media, postings and podcasts) it is highly improbable that the limited jurisprudence of federal criminal statutes intended to reach the intangible, and perhaps fanciful, right to be free from disagreement by the disgruntled.

**b. The Statutory History of the Hobbs Act and 18 U.S.C. § 875(d) Confirms That the Object of the Extortion Must be a Transferrable Economic Interest.**

Next, the Government argues that Senator Attar's reliance on the Supreme Court's decision in *Sekhar v. United States*, 571 U.S. 729 (2013) is misplaced because that case addressed the

4

definition of extortion under the Hobbs Act, 18 U.S.C. § 1951(a), rather than 18 U.S.C. § 875(d) — the statute under which the Defendants are charged here.[1] To this end, the Government takes great pains to draw distinctions between the definition of "extortion" in 18 U.S.C. § 875(d) and 18 U.S.C. § 1951, arguing that the former should be interpreted more broadly than the latter. Opp. at 17-18. The Government is correct that the language in the two extortion statutes is not identical, but minor differences in the statutory language are not dispositive as to the congressional intent and textual history underlying the criminalization of the offense of extortion.

This principle was explicitly recognized by the Second Circuit in *U.S. v. Jackson*, in which the court compared the definition of extortion under the Hobbs Act to its definition under 18 U.S.C. § 875(d) to determine whether wrongfulness was a requisite element of the offense. 180 F.3d 55, 67-68 (2d Cir. 1999). Although the meaning of the term "thing of value" was not at issue in *Jackson* (there was no dispute that the defendants had demanded money from the victim), the court's analysis of Congress's intent in drafting the extortion statutes is nevertheless instructive here.

Tracing the statutes' history, the court observed that "in enacting provisions dealing with extortion, Congress has simply been inconsistent" in the inclusion of certain terms of art, but not others. *Id.* at 67. But, the court continued, Congress's "inconsistency in format does not appear to bespeak different legislative intentions as to the meaning of extortion." *Id.* To the contrary, the historical context underlying the extortion statutes' passage supports the conclusion that "the substance of their prohibitions is the same." *Id.* at 68. Specifically, the court explained, the statutory predecessor to 18 U.S.C. § 875(d) "was enacted contemporaneously with the Anti-Racketeering

---

[1] It should, however, be noted that the defendant in *Sekhar* was charged under both statutes. *Sehkar,* 570 U.S. at 732 n.1.

Act of 1934 . . . which is the predecessor to the Hobbs Act, 18 U.S.C. § 1951." *Id.* at 69. Congress's "simultaneous consideration of the two enactments focusing on extortion gives rise to a strong inference that Congress intended to give the same meaning to extortion in both statutes." *Id.* Other circuits have agreed with the *Jackson* court's conclusion. *See, e.g.*, *U.S. v. Coss*, 677 F.3d 278, 285 (6th Cir. 2012) ("[T]here is strong evidence to suggest that Congress intended extortion to mean the same thing in 18 U.S.C. § 875 as it does in the Hobbs Act."); *U.S. v. White*, 810 F.3d 212, 223 (4th Cir. 2016) (quoting *Coss*, 677 F.3d at 285) ("[T]wo of our sister circuits have persuasively reasoned, and we agree, that § 875 employs 'the traditional concept of extortion[.]'"). Accordingly, the Government's attempts to differentiate the meaning of extortion between § 875(d) and the Hobbs Act misses the mark.

Longstanding principles of common law and Supreme Court precedent recognize that a cognizable allegation of extortion requires the Government to establish that the defendant sought to obtain a property interest "capable of passing from one person to another." *Sekhar*, 570 U.S. at 734 (internal quotation marks omitted) (citing *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 404 (2003)). Indeed, the presence or absence of a "transferrable thing of value" is not merely a matter of semantics as the Government suggests; rather, it is the defining feature of extortion through which the offense is distinguished from the offense of coercion. The Supreme Court analyzed this distinction in *Scheidler*, where it observed that "extortion requires that one 'obtains [the] property of another' using threat as 'the method employed to deprive the victim of his property.'…Coercion, on the other hand, is defined as making 'specified categories of threats… with the purpose of unlawfully restricting another's freedom of action to his detriment." 537 U.S. at 408 n.13 (alterations in original). This Court similarly emphasized the distinction between extortion and coercion in *United States v. Fitzgerald*, 514 F.Supp.3d 721, 763 (D. Md. 2021).

There, the Court opined that while "extortion and coercion both involve forcing someone to do something that is within the extortionist's own wishes" the "key distinction between the two [offenses] is the obtainment of property." *Id.*

The facts alleged in the Indictment do not involve transferable property. Rather, as alleged in the Indictment, the purported "purpose" of the alleged conspiracy was "to prevent Victim 1" from taking a particular course of action: (1) engaging in any act or speech that could negatively impact the election campaign or political aspirations of Senator Attar; (2) performing any work for any other candidates for office who would challenge Senator Attar; and (3) otherwise taking any action that could negatively influence Senator Attar's election campaigns. ECF 1 at ¶ 11. Taken together, it is evident that at best, the Indictment alleges coercion, not extortion, because the Defendants did not seek to obtain a thing of transferrable economic value. Consequently, even the Government's characterization of what the Defendants sought to obtain is legally deficient and renders the Indictment invalid.

### c. Neither the Indictment nor the Government's Opposition Identify a Cognizable "Thing of Value" Capable of Being Extorted.

Even if the Court were to accept the Government's faulty premise that the object of an extortionate conspiracy need not be something of transferrable economic value, it should nevertheless dismiss Counts Two, Three, Five, Six, Seven, and Eight of the Indictment. As an initial matter, the Government's Opposition fails to consistently identify the "thing of value" purportedly sought by the Defendants pursuant to the alleged conspiracy to extort. In one breath, the Government claims that the "object" of the alleged extortion was Senator Attar's fear of "the effect that Victim 1 could have on her candidacy for office" and Senator Attar's "desire to not have Victim 1 affect her election." Opp. at 20-21. But in the next breath, the Opposition defines the "thing of value" as Victim 1's economic interest in earning a living as a political consultant. Opp.

at 23-24. Not only are these representations internally inconsistent, but the latter argument is inconsistent with the text of the Indictment. The Government's inability to pin down the "thing of value" allegedly sought by the Defendants' purported extortion scheme underscores the fatal deficiencies in the present prosecution.

Moreover, even under the Government's narrow and erroneous reading of the extortion statutes, the Indictment is facially deficient because it fails to allege that the Defendants sought to "obtain" anything of value — either tangible or intangible — from the alleged victims. Instead, the Indictment merely alleges that the Defendants were motivated by a desire to prevent Victim 1 from engaging in a particular course of conduct that could have interfered with Senator Attar's political campaign. But allegations concerning the Defendants' purported motivations do not establish that they sought to obtain something of value via extortion, and, therefore, are deficient as a matter of law.

### i.    Extortion Pursuant to 18 § U.S.C. 875(d).

The Government's Opposition offers several potential theories as to what constitutes the "thing of value" at the center of the alleged extortionate conspiracy.  With regard to the extortion charge arising under 18 U.S.C. § 875(d), the Government appears to posit that Senator Attar "placed . . . value" on "her desire to not have Victim 1 affect her election" or "impact her campaign." Opp. at 21. Put differently, the Government asserts that Senator Attar's desire to prevent Victim 1 from interfering with her political campaign was the motivation for the alleged conspiracy, and, therefore, the object of the alleged extortion.

But a defendant's alleged motivation does not equate to a "thing of value" capable of being extorted from the purported victims. *Scheidler*, 537 U.S. at 405 (holding that even if the "ultimate goal" was to shut down abortion clinic, no extortion occurred because protestors did not "obtain"

property and "neither pursued nor received 'something of value'" from clinic). To the contrary, the "gravamen of the offense" of extortion is "loss to the victim." *U.S. v. Hairston*, 46 F.3d 361, 366 (4th Cir. 1995). Here, the Indictment alleges no such "loss" to the victim.

The Supreme Court's opinion in *Scheidler* further illustrates this point. 537 U.S. at 405. There, it was alleged that a group of abortion protestors engaged in extortion through a nationwide conspiracy to shut down and prevent access to abortion clinics. *Id.* at 398. In their efforts, the protestors had "interfered with, disrupted, and in some instances completely deprived [the plaintiffs] of their ability to exercise their property rights." *Id.* at 404. Nevertheless, the Court concluded that although the protestors may have "deprived or sought to deprive" the plaintiffs "of their alleged property right of exclusive control of their business" they did not obtain "something of value" from the plaintiffs that "they could exercise, transfer, or sell." *Id.* at 405. Under such circumstances, the Court found that the protestors' actions did not constitute extortion, notwithstanding the fact that their "ultimate goal" was to preclude access to the clinics. *Id.*

Thus, *Scheidler* stands for the proposition that the mere desire or motivation to deprive one of a property right (even one that is intangible) does not suffice to establish the offense of extortion. *Id.* It follows that here, even a desire by the Defendants to prevent Victim 1 from interfering with Senator Attar's campaign does not constitute "something of value" capable of being obtained through the alleged *extortion* scheme. At best, the Government has alleged coercion, not extortion. *Id.* at 404-05 (observing that the defendants' attempts to block access to abortion clinics were more "accurately describe[d]" as coercion, rather than extortion); *cf. State v. Norcross*, 353 A.3d 463, 501 (N.J. Super. Ct. App. Div. 2026) (internal citations and quotation marks omitted) (explaining that the "primary difference" between the state's coercion statute and the state's extortion statute "is the actor's purpose: extortion is designed to obtain property of another" while "coercion seeks

9

to restrict another's freedom of action"); *see also Criminal RICO: 18 U.S.C. §§ 1961-1968 A Manual For Federal Prosecutors* § 2(b)(1), U.S. DEP'T OF JUST., JUSTICE MANUAL, 6th ed. (2016)[2] ("*Scheidler* establishes a general rule that a defendant does not 'obtain' or seek to obtain property within the meaning of the Hobbs Act *and generic extortion* by merely interfering with or depriving someone" of their freedom or rights).

Ignoring this controlling authority, the Government relies on the Fourth Circuit's unpublished opinion in *United States v. Kulla*, 434 F. App'x 268, 269 (4th Cir. 2011), in which the Court addressed the sentencing guideline calculation for a conviction under 18 U.S.C. § 242 (deprivation of rights under color of law).[3] Opp. at 20. In *Kulla*, the defendant challenged his sentence calculation, contending that the blackmail statute should not have been used as the underlying offense for purposes of determining his offense level under USSG § 2H1.1(a)(1) because he merely pursued a romantic relationship with the victim and did not "demand a 'thing of value' from her." 434 F. App'x at 269. The Court rejected the defendant's argument and concluded that the victim's "time and attention" constituted an intangible thing of value that had been demanded by the defendant, relying on an interpretation of "thing of value" in cases from other circuits applying different statutes. *See United States v. Townsend*, 630 F.3d 1003 (11th Cir. 2011) (drug dealer's freedom a thing of value obtained by bribing the defendant, a pretrial officer, under  the bribery statute, 18 U.S.C. § 666(a)(1)(B)); *United States v. Moore*, 525 F.3d 1033, 1039 (11th Cir. 2008) (considering bribery of a public official, 18 U.S.C. § 201); *United States v. Marmolejo*, 89 F.3d 1185, 1191 (5th Cir. 1996), *aff'd sub nom. Salinas v. United States*, 522 U.S. 52 (1997) (considering the bribery statute, 18 U.S.C. § 666);  *United States v. Girard*, 601 F.2d 69,

---

[2] The Justice Manual is available at https://www.justice.gov/usam/file/870856/dl?inline.
[3] The defendant threatened the victim, an alien, with deportation if she did not acquiesce in his efforts seeking to obtain her time and attention.

71 (2d Cir. 1979) (considering the defendants' unauthorized sale of confidential government information under 18 U.S.C. § 641)). Neither *Kulla* nor the cases cited are based on convictions under the extortion statutes. More importantly, however, they involved the defendant's efforts to *obtain* something of value from the *victim*. As noted *supra,* based on the allegations in the Indictment, Senator Attar did not seek to *obtain* anything of value, tangible or intangible, from Victim 1.[4]

### ii. Extortion Pursuant to the Travel Act and Maryland Law.

In arguing that the Travel Act counts (Counts Five - Eight)[5] are properly charged the Government broadly proclaims that the drafters of Maryland's extortion statutes "viewed a more expansive definition of the interest at stake than simply 'property,' as the Hobbs Act calls for." Opp. at 22. Not so. Maryland's highest court has explicitly recognized that the state's extortion statute "appears to be patterned after the Hobbs Act" and, therefore, should be read consistently with that statute and federal cases analyzing its application. *State v. Rendelman*, 947 A.2d 546, 557-58 (Md. 2008) (collecting cases); *see also Frederick v. State*, 2017 WL 4675797, at *4 (Md.

---

[4] Similarly, in *United States v. Hobgood*, relied on by the Government, Opp. at 20, the defendant argued that there was insufficient evidence that his conduct constituted extortion.  868 F.3d 744, 746 (8th Cir. 2017). In that case, the defendant was alleged to have harassed a former love interest in an effort to obtain an apology from her. *Id.* The Eighth Circuit affirmed the district court's conclusion that the defendant's "efforts to secure a *mea culpa*" from the victim constituted extortion. *Id.* at 748. Other cases cited by the government also involve the defendant *obtaining* something of value. *See, e.g.*, *United States v. Barraza*, 655 F.3d 375, 383–84 (5th Cir. 2011) (considering defendant's attempts to "obtain money and sexual favors in exchange for his assistance in his capacity as judge" under theory of honest services fraud); *United States v. Owens*, 585 F.3d 1055, 1058 (7th Cir. 2009) (considering whether the defendant's expectation that he would receive a "sexual encounter" satisfied the "something of value" requirement under sentencing enhancement guideline, U.S.S.G. § 2G2.2(b)(3)).

[5] The opening Motion to Dismiss was erroneously captioned as requesting dismissal of Counts Two, Three, and Five of the Indictment, although the request substantively sought dismissal of Counts Two, Three, and all of the charges arising under the Travel Act (Counts Five through Eight). The substance of the analysis remains the same.

Ct. Spec. App. Oct. 17, 2017) (observing that the Maryland extortion statute "closely resembles common law extortion and appears to have been based on federal statutes that, in turn, were based on common law extortion[.]"); *see also United States v. Snyder*, 2025 WL 948927, at *7 n.4 (D. Md. Mar. 28, 2025) (observing that Maryland's extortion statute was patterned after the Hobbs Act).

The Government also asks this Court to ignore the unequivocal holding provided in *Kimberlin v. Hunton & Williams LLP,* and affirmed by the Fourth Circuit. 2016 WL 1270982 (D. Md. Mar. 29, 2016) (plaintiff's allegation that the defendants sought to interfere with his "business activities[,]" "livelihood[,] and reputation" failed to state a claim under Maryland's extortion statute), *aff'd*, *Kimberlin v. Hunton & Williams LLP*, 671 F. Appx. 127 (4th Cir. 2016). The Government attempts to distinguish this case from *Kimberlin*, by claiming that the "vague property interest" asserted by the *pro se* plaintiff in that case is "far from that discussed herein." Opp. at 23.

But the Government's own Opposition contradicts this assertion. In *Kimberlin*, the plaintiff alleged that the defendants engaged in a campaign to "extort things of value" from him, "including [p]laintiff's livelihood and reputation." 2016 WL 1270982, at *10. Here, the Government's Opposition argues that the "thing of value" at the center of the alleged extortion plot (at least with regard to the Travel Act violations) was Victim 1's "profession" and "livelihood" as a political consultant. Opp. at 24. The parallels in the allegations cannot and should not be summarily disregarded as the Government asks this Court to do.

The Government's explanation suffers from another fatal flaw: nowhere in the Indictment is it alleged that the "thing of value" sought pursuant to the alleged conspiracy was Victim 1's livelihood, career, or ability to earn a living. While the introductory portion of the indictment refers to Victim 1 as a "paid political consultant, working on the campaigns of [federal and local]

candidates," ECF 1 at ¶ 5, it never makes the leap offered by the Opposition to specifically tie the alleged extortion to Victim 1's ability to earn a living. *See* Opp. at 24. Rather, the "purpose of the conspiracy," as alleged in the Indictment, was the Defendants' purported desire to "prevent Victim 1" from taking actions that would interfere with Senator Attar's campaign.[6] The Government should not be permitted to use its Opposition to fill in the gaps or add substantive details to supplement the allegations in the deficient Indictment.

For the same reasons that the Indictment fails to adequately allege a violation of 18 U.S.C. § 875(d), it similarly fails to allege a violation of the Travel Act. Specifically, the Indictment fails to identify anything of value – either tangible or intangible – that the Defendants allegedly sought to "obtain" from the purported Victims through the alleged extortion.  For these reasons, and those stated in Senator Attar's Motion, Counts Two, Three, Five, Six, Seven, and Eight of the Indictment should be dismissed.

### III.    CONCLUSION

The Indictment cannot sufficiently allege the elements of extortion under either federal or Maryland state law.  Rather, the allegations in the Indictment illustrate that the Defendants simply sought to be free of harassment and antagonization from Victim 1 and to preclude Victim 1 from taking a particular course of action. This is not extortion under any definition of the term and the Government's revisionist Opposition cannot constructively amend the Indictment. Accordingly, Counts Two, Three, Five, Six, Seven, and Eight of the Indictment fail as a matter of law and should be dismissed.

 Dated: May 22, 2025                                  Respectfully submitted,

                                                      */s/ A. Jeff Ifrah*

---

[6] Defendants do not agree that this allegation states a cognizable theory of extortion.

A. Jeff Ifrah
James M. Trusty
IFRAH PLLC
1717 Pennsylvania Ave, N.W.
Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jeff@ifrahlaw.com
jtrusty@ifrahlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May 2026, I electronically filed a copy of the foregoing with the Clerk of Court via CM/ECF which will notify all counsel of record.

Dated: May 22, 2026

/s/ A. Jeff Ifrah
A. Jeff Ifrah
